Thank you, Your Honors. Good morning. Dan Lott appearing on behalf of the appellant, Jimit Mehta, who is present in court today. I'd like to reserve two minutes for rebuttal of my law school classmate, Ms. Vogel. Three items, reliance, judicial notice, and the Chang case, which we lodged with the clerk this morning. The district court imposed what I would call an overly onerous standard of pleading that does not exist under Iqbal and Twombly in requiring Mr. Mehta to allege that he could have done things in alternate to relying upon what was filed. And I would like to reserve two minutes for rebuttal of my law school classmate, Jimit Mehta, who is present in court today. I'd like to reserve two minutes for rebuttal of my law school classmate, Jimit Mehta, who is present in court today. Can I ask you one factual question? Yes, Your Honor. You argue that there were irregularities in the foreclosure proceeding itself, that is, when they put it up. You say they had the wrong time and the wrong address? That's right, Your Honor. Would you have had an independent ground to challenge that foreclosure proceeding based on those defects under California law? I think that could have been done at the time. I was not trial court counsel, so I don't know what all decisions were made concerning that. But the answer to the court's question, Judge Corman, I believe is yes. Do we know how wrong the address was? Is to say, was it, you know, just a single number off? Because part of the suggestion is it's such a wrong address, nobody could bid on it because they couldn't figure out what house it was. Do we know how wrong the address was? Your Honor, standing here, I don't know. But I, if the court would give me leave, 24 hours, I would answer the question in a letter to the court. I'll defer to the presiding judge. But typically we would ask you in absent of a specific request post-argument. You're probably free from doing that. But anyway, I'll defer to the presiding judge to help us to handle that. Yes, Your Honor. Thank you. Plaintiffs are not required to show in this circuit or in any circuit before or after Iqbal and Twombly that they realistically could have pursued other options as an alternative to reliance. And moreover, common sense, which the Supreme Court tells us the courts are to apply when they are construing Rule 8, would lead us to say, why would a plaintiff homeowner in the position of Mr. Maida pursue these other alternatives like bankruptcy, getting a TRO, pursuing a refinancing, when all of the bank personnel that he's dealing with and this revolving door of personnel that he's dealing with are telling him the same thing, which is you're in a modification, you're in compliance, we're postponing the trustee's sale, you don't need to do anything. A homeowner in that position... Maybe I misread it, but I thought he had had his three months and that under this, I'm not sure you call it, whatever you call it, a loan modification agreement and that he hadn't provided sufficient documentary information. He had. Well, I'm just, that's my recollection of the other side's argument. If I may be misrecollecting. I'm sorry, Your Honor, I'm just not understanding. I said that's my recollection of the other side's argument. That he... That he had this three months where he made the payments, but part of the agreement was that he had to provide them with adequate paperwork and they found the paperwork was inadequate. But... Is that wrong? That is wrong. It's not wrong that that's their argument, but that is factually wrong. He provided hundreds of pages of documentation. He provided everything and more that he was asked to provide. There were some points along the way where he was told there's a document missing, you need to resubmit everything over again. I think his divorce decree, he was told, was missing. He went and got it, resubmitted everything again. And significantly, Your Honor, this is the same sort of behavior that we see in other cases involving Wells Fargo in which the courts have stepped in and said that is the sort of behavior that triggers promissory estoppel. That is the sort of behavior that triggers the reasonable reliance of a homeowner who's done everything that he's told to do and who complies at all times and who is not someone who sits in the property and doesn't make his payments like we see sometimes in the bankruptcy court, for example. This homeowner made every payment that he was required to make in his modification, and he still had the property taken away from him in the most stealthy and sneaky way almost imaginable that I've ever seen in one of these cases. Yeah, but you just acknowledged that you had a remedy under California law. I mean... He had remedies that he pursued. But it's still like you may have been able to allege a cause of action here. I mean, that would have been a clear, clean cause of action saying they conducted this sale, it was unfair, they didn't give the right address, and they didn't give it at the time that it was originally scheduled for and set it aside. The court is saying there's another potential cause of action that could have been brought that wasn't, but that does not, Your Honor, undermine in any way the validity of the claims for relief that he did properly allege. The fact that a plaintiff theoretically has another cause of action that he can bring doesn't demolish the claims that he does bring that are valid, and that's a very important point. There was a quiet title claim below. It's not pursued on appeal. So within the four corners of what was alleged in the district court, there was that claim. We have elected not to pursue it on this appeal. The three claims before Your Honor today are for promissory estoppel and the two fraud-based claims. And those are meritorious claims. Let me ask you about the promissory estoppel. The district judge dismissed the promissory estoppel claim on the ground that the only thing that could be construed as a promise was the statement by the bank person on December the 30th, and that in the three working days between December the 30th and the date of the sale, January the 5th, it was implausible that he would have done anything. That is to say that he refrained from acting such that it would be reliance, thus producing promissory estoppel. You, or rather in his complaint, he says that he could have, plaintiff would have had the opportunity to send her the sufficient funds to cure his default. I'm skeptical as to whether he might have been doing that if he'd had only the three business days. Alternatively, sought out bankruptcy remedies or undertaking a plan for orderly liquidation and then two paragraphs down getting a preliminary injunction. Now, I'm having trouble figuring out whether this is a statement in the complaint that he, had he known he would have filed for bankruptcy and gotten himself an automatic stay or that he could have. I mean, if you file for bankruptcy, you get an automatic stay. But this is a little bit short of saying that he would have filed for bankruptcy. What am I supposed to do with that? That sort of allegation suffices for Rule 8. Why, when it only says could have instead of would have? This is a fly-specking standard now that we're getting into that doesn't exist under our law. You know, the plaintiff, that pleading, fairly construed, says, I would have and I could have. Common sense. As we're told in Justice Souter's opinion, we're to apply common sense to pleadings. A plaintiff who says, if I'd only known that Wells Fargo was going to take my home away from me, I would have filed for bankruptcy. And I could have filed for bankruptcy. What would have stopped him from filing for bankruptcy if someone from the bank had said, I got bad news for you, on January 5th we're having a trustee sale. You can show up if you want. You know, there's nothing that, you know, we're going to give back your money. That wasn't done. Your Honor, let's compare this situation. Let's not treat it in a vacuum. The Chang case, which comes out of the Northern District of our state, which we've just lodged, same facts, same allegations, same promissory stop claim under the scrutiny of the court, as is here today. And Judge Conte of the Northern District said, a plaintiff who said, I would have filed a bankruptcy if I'd only known that the bank was lying to me about what they were going to do, suffices to establish promissory stop against a motion to dismiss by Wells Fargo. One of the reasons that we have this circuit, and all the circuit courts, you know, of course, is to harmonize these incongruities out of two different courts. We have a court in the Southern District in our case that says, that sort of allegation, Judge Fletcher, that you are scrutinizing now, doesn't suffice to establish promissory stop for Rule 8 purposes. We have the same facts, exact same facts, out of the Northern District in the Chang case, and we have Judge Conte saying, that passes muster. Maybe it won't fly on summary judgment or trial, but it passes muster now. This court is here to resolve that. Can I ask you one more question before your time runs out? Yes, Your Honor. And I see that, yes. Should the bank have reasonably expected that he would not, that he would file for a TRO and engage in other activities to stop the foreclosure? And is that an element of promissory estoppel in California? They should have expected that. I don't know that it's an element of promissory estoppel of what the promissor would expect the promisee to do. But not only should they have expected that, that's the reason, I think, a strong inference is, that's the reason they didn't tell him the truth, because they didn't want to find themselves in court on a TRO like they did in the Peterson case, in which the same firm that is now here for the bank argued unsuccessfully against a TRO. This bank doesn't want to be in court defending a TRO. And so they don't, or back in that era, because they don't want district courts granting temporary restraining orders, stopping them from taking homes away. I forget how many extensions they gave him in terms of putting off the foreclosure and the opportunity to cure it. There's no legal limit on the number of extensions, Your Honor. I mean, there's not some rule that says a bank should only give three or four extensions. No, but you're attributing all of this malevolence and you're flinging dirt. I'm not attributing anything that isn't factual, Your Honor, and don't ask me. Let's look at the executive branch and at the bankruptcy courts. We have asked judicial notice of materials whereby our executive branch has found Wells Fargo's foreclosure practices in this same era to be unethical and unfair. And this very practice, which is called dual-track foreclosure, which is a term in their 50-page brief, does not appear once. It's like it's a practice that dares not speak its name. The bank no longer uses that because of a settlement with the federal government whereby they've withdrawn this practice of this dual-track. We're going to have a foreclosure track, which is a secret track. We're going to have the modification track whereby we're going to ask you to pay money, and you're going to pay money, and we're going to tell you everything's okay and your sale is postponed, and then we're going to yank the rug at the last possible second after we've lulled you into a false sense of security. That's not dirt. That's fact, and that's in the request for judicial notice, and that is significant. Thank you, Counsel. You have consumed all of your time for your side. We'll now hear from the bank. Thank you. I appreciate it. Good morning, Your Honors. Excuse me. Karen Vogel on behalf of the defendant, Wells Fargo Bank. Counsel, we have this question about the address, and counsel has indicated he would be able to identify where in the record we could find that information. Do you have any objection to that, or do you have any further information? I don't believe there's – well, a couple things, Your Honor. I do object to it. First of all, it's not part of the – any of the claims that were made, and on Demurr – Demurr, I'm sorry, I'm speaking a State court term – on the motion to dismiss, all we are looking at is the allegations, the claims that are being made. Those claims don't make that – that claim is not legally made in this case, so it's irrelevant. Then you're volunteering in your brief that the whole thing was kosher. You actually say that. You don't use the word kosher, but you get what I'm saying. You say there was a perfectly proper foreclosure proceeding. They – there are no allegations in the complaint that would allege that legally it was improper. They make that factual statement without – without support other than just the statement that's made in the complaint. Well, is there anything in the record that would indicate what the address was that was actually used? I don't believe – it sounds to me like what the allegation is in the complaint, again, untied to any claim, is that the spoken address at the time of the sale was different than what the actual address is of the property. I don't believe that there's anything in the record that would indicate what – what was actually spoken. I believe that if Mr. Lawton were to get that information, it would have to be additional evidence, some sort of declaration, or some other unsupported by the record statement. Well, we'll – we'll pursue that. But what you're saying is that there's nothing in the record which would answer the question what was the actual address used. Is that correct? I believe that's correct. That's correct. Very well. Go ahead. Continue with your argument. Sure. In this case, I would draw you back to the complaint. All we have to do in our motion to dismiss is address the allegations of the complaint as well as the claims in the complaint. And as counsel has indicated, those – there are just three of them. They all key off of one statement that was made on December 30th, and it's that statement that we're addressing here. And the issue is plausibility and whether it's plausible that there was reliance on that statement and if that's adequately alleged in the complaint. And the plausibility standard is a little bit different, or it's a little bit – there are two things that the Supreme Court said that should be considered when you're considering the plausibility issue, and that is when you take into context and good sense, common sense. So context and common sense make a difference. So if you do that in this case, and if you look at all of the things that the allegations of the complaint say could have been done, that Mr. Mehta could have done, not that he would have done, but that he could have done, plausibly, it doesn't fly. And I could address each one of them. Because – yeah, address, if you would, the bankruptcy. Because if he had filed for bankruptcy in that intervening period between December 30th and January 5th, he would have gotten an automatic stay. And that's actually the easiest one to, I think, address. Okay. And that one, you can look at the Aceves case to determine that case dealt with a bankruptcy. And the Court laid out pretty plainly in that case what the options were to a homeowner who was going – who was considering bankruptcy. And in that case, if you recall, the borrower, in fact, was in bankruptcy and filed a Chapter 7. Well, I think what you're going to say – I hope I'm trying to save time and short circuit. Sure. The Aceves case makes it very clear that we've got detrimental reliance because there was an explicit promise not to file bankruptcy. I got that. No, a little differently. Sorry, Your Honor. But it lays out what the law is. And it says for a Chapter 7, the whole point is that – I'll look at my notes so I can be more precise. Chapter 7 is liquidation. It permits the debtor to discharge unpaid debts, but a debtor who discharges an unpaid home loan can't keep the home. I understand that. So the point being that – No, no, no. You would get a delay. That's exactly what I'm – But only a delay. And it would not stop a foreclosure. Yeah, but once he gets the delay, once he's in bankruptcy, that totally changes the bargaining positions of the two sides. He stops the sale, it's hold the phone, I'm now in bankruptcy, let's talk. But at that point, the bank talks differently. This is why I think it's not plausible, is because, number one, he didn't want to lose his home. So to go into bankruptcy under Chapter 7 wasn't plausible. Also, if you look at it and take it in context, if you look at the divorce degree, the total of it, which he only applied – only gave the bank – and actually, it wasn't for a loan modification. It was a special forbearance agreement. And if you look carefully at – I mean, if you look not even carefully, if you just look on its face, that's what it was called, a special forbearance agreement. It was never a loan modification. In any event, if you look at the divorce decree that was filed in this case in connection with earlier complaints, and the whole of it, and not just page 4, you'll see he had many assets. He had many assets. He had a business, he had a restaurant, he had many different assets to say that he would have filed bankruptcy, Chapter 7, liquidation. There's nothing to take this case from a could to a would. It would have essentially been a fraudulent filing in that. It would have. And in Chapter 13. What about the TRO, then? The TRO, this is interesting. He says he could have, but would he have? And the reason I say that it wasn't plausible that he would have is if you look at this case and you look at what happened and what's alleged in the complaint early on, he was in default. The notice of default was issued. He had been in default. By the time the notice of default was issued in March of 2009, he owed $63,000 on his house. The $21,000 that he paid per the special forbearance agreement was really minor in comparison to all that was owed by the time of the foreclosure. But the notice of sale, I'm sorry, the notice of sale that was originally set was, the sale was set for July 16, 2009. On July 9, the complaint alleges, he first contacted counsel. At that time, on July 13, three days before the sales, when they first submitted to the bank something that was a loan modification package, you know, a proposal. So to say that he would have filed a TRO, he would have filed an action, it's belied by what he had done in the past. He really just wanted to do the TRO. Yes. It's interesting. She doesn't say would have. I'm reading page 4 of her order. It's in her discussion of intentional and negligent misrepresentation. But she then incorporates it by reference when she gets to the promissory estoppel discussion. I'm on lines 4 and 5. It's page 4 of her order. I think it's maybe page 6 of the ER. I'm not sure. Page 6. What she writes is, what plaintiff has not alleged, however, is whether he realistically could have pursued these options three business days before the sales. So she doesn't say would. She says could. So what's making it not feasible for him in the sense it could not have filed for a TRO? I think I got you on the bankruptcy filing. I mean, if he's got too many assets and a fraudulent filing, I'm with you. But what about why couldn't he have filed for the TRO? Could have, whether he could have, and also whether it would have been granted. So I think that there are both of those issues out there. And she's a judge. So she's a judge that's going to be hearing this. No, she's not going to hear the TRO. I don't think that's going to be a state court matter. Well, it was still in front of her. Oh, it wasn't in front of her at that time. Well, I mean, we're now in federal court, right? Right, correct. But at the time, you're right. The TRO, if there had been one, would have been in front of the state court. Yes. First of all, there's nothing to indicate in the complaint what time these conversations were happening on the 30th of December. I don't know if you ever tried to do anything on the 31st of December in state court, but unlikely that it's going to happen. You have to give notice, first of all, too. You have to give 24 hours notice. In this case, it would have been carried over until the 4th of January. It would have been, it just, to say that he could have, you know, and perhaps she should have gone further and said there's nothing to show he would have. Merely saying I could have and I would have are two different things entirely. Are TROs, I'm not familiar with the practice in state courts here, but are they normally granted? I mean, is it, can you, can you, can you assume that if you go for a TRO, the judge is going to, judge is going to grant it? I mean, I haven't granted every TRO request that's come before me. It's interesting because actually, this, we'd have to look to the record to find it. It's something that could be taken judicial notice of. But in this case, I believe a TRO was filed after the sale to keep the property being sold to a third party. And that was, my understanding is that was denied. We would have to have judicial notice taken of that. But in fact, after the sale, a TRO was filed and it was denied. Thank you, Counsel. You have consumed all of your time. We have a question for Mr. Lawton. You now are aware that your opposing counsel says that this is not in the record. What is your representation to us? This is the matter we're having to do with the address. Yes, Your Honor. My information, and I confer with my client about this while Ms. Vogel was speaking, is that the address was off by 10 digits or more. It was 120-something. Okay. Where in the record? Is it your representation to court today that you will look in the record and find the record evidence of that? If it's in the record, I will find it and have it to the court within 24 hours. I'm not representing that it is in the record. But if it's there, I will find it and bring it to the court's attention within 24 hours. Okay. Very well. Just very briefly, I believe there was a misstatement of our position, and I just wanted to very quickly clarify that. Counsel, you've more than consumed your time. Thank you. The case will be deferred submission for seven days to allow counsel to bring to our attention where in the record the address issue can be found. Counsel may also advise the court from its point of view as well. Thank you very much. You're very welcome. Thank you.
judges: Korman, O'scannlain, Fletcher